UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
EQUAL EMPLOYMENT OPPORTUNITY                  :
COMMISSION,                                   :
                                             :
                        Plaintiff,           :     MEMORANDUM & ORDER
                                             :
            -against-                         :     15-CV-05370 (ENV) (PK)
                                             :
AZ METRO DISTRIBUTORS, LLC,                   :
                                             :
                        Defendant.     x
--------------------------------------------------------------

VITALIANO, D.J.

On September 16, 2019, a jury found that AZ Metro Distributors, LLC ("AZ Metro")

unlawfully terminated the employment of Archibald Roberts and Cesar Fernandez, on the basis

of claimants' ages, in violation of the Age Discrimination in Employment Act ("ADEA").  The

jury found that the violations were willful and awarded approximately $458,000 in back pay

damages between the two claimants.  Presently before the Court are dueling post-trial motions.

For the reasons that follow, each motion is granted in part and denied in part.

Background

On January 31, 2014, the employment of Archibald Roberts, 66 years of age at the time,

and Cesar Fernandez, then 64 years old, was terminated.  Both had been regional swing salesmen

for beverage distributor AZ Metro.  In the ordinary course of their work, Roberts and Fernandez

would fill in for absent regular route salespersons and cover the salespersons' territory, which

required them to meet with the grocers and bodegas along the route, check their inventory, and

try to make sales wherever they saw a gap in product.

Roberts claims his supervisor, Glenford Barsattee, fired him and explained on a call

during his last day that upper-level management sought to move AZ Metro's salesforce in a younger direction and to hire more women.  Fernandez, claiming he was also fired the same day, attached Barsattee's explanation of Roberts's termination to his own termination.  AZ Metro, however, denied any such plan and claims rather that Roberts and Fernandez resigned.  The two had received performance write-ups in the past and, so AZ Metro proffered, simply gave up on improving their own performance and decided it would be better to resign than deal with another write-up.

The Equal Employment Opportunity Commission ("EEOC") filed a complaint against AZ Metro with Roberts and Fernandez as claimants on September 17, 2015, alleging violations of the Age Discrimination and Employment Act ("ADEA").  Having survived over four years' of hotly contested motions to dismiss, discovery disputes, and potential settlement arrangements, EEOC's claim made it to trial on September 17, 2019.  This trial resulted in a verdict in favor of EEOC, finding that AZ Metro had willfully terminated Roberts and Fernandez on the basis of their ages, and awarded full back pay to each in the amounts of $207,704.78 and $250,288.96, respectively.

Following the trial, both parties filed bundled post-trial motions.  EEOC moves for injunctive relief and judgment as a matter of law with respect to back pay, front pay, prejudgment interest, liquidated damages,[1] and mitigation.  AZ Metro moves for judgment as a matter of law on the issue of back pay and mitigation, or in the alternative a new trial conditioned on the EEOC's refusal of remittitur.  Additionally, AZ Metro moves for a new trial on the *prima facie* ADEA claim as a result of the individual and cumulative effect of a set of

---

[1] The issues of prejudgment interest and liquidated damages have been referred to Magistrate Judge Kuo for a Report & Recommendation.

claimed errors made by the court in admitting evidence.

Legal Standards

I.   <u>Rule 50 Judgment as a Matter of Law</u>

"Under Rule 50, judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Malmsteen v. Berdon, LLP*, 595 F. Supp. 2d 299, 303 (S.D.N.Y. 2009), *aff'd*, 369 F. App'x 248 (2d Cir. 2010) (quoting *Merrill Lynch Interfunding v. Argenti*, 155 F.3d 113, 120 (2d Cir.1998)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 50(a)(1).  A "district court may set aside a jury's verdict pursuant to Rule 50 only where [1] there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or [2] there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." *Levitant v. City of New York Human Res. Admin.*, 914 F. Supp. 2d 281, 295–96 (E.D.N.Y. 2012), aff'd, 558 F. App'x 26 (2d Cir. 2014) (quoting *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 127–28 (2d Cir.2012)) (alterations in original).  In deciding a Rule 50 motion, the trial court considers the evidence in the light most favorable to the non-movant and accords all reasonable inferences in the non-movant's favor.  *Black v. Finantra Capital, Inc.*, 418 F.3d 203, 209 (2d Cir. 2005) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir.2001)).  In reaching its ruling, the trial court "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Id.* (quoting *Tolbert*, 242 F.3d at 70).

II.  <u>Rule 59: New Trial and Remittitur</u>

When a court grants a "renewed motion for judgment as a matter of law under

Rule 50(b), the court 'must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed' and state the grounds for its conditional ruling." *Levitant v. City of New York Human Res. Admin.*, 914 F. Supp. 2d 281, 306 (E.D.N.Y. 2012) (quoting Fed. R. Civ. P. 50(c)(1)).

Under Rule 59, the Court may, on motion, grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), and a new trial "ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice," *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 82 (2d Cir.2006) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 365 (2d Cir.1992) (internal citation omitted)).  The Second Circuit has instructed that "[w]here there is no particular discernable error ... a jury's damage award may not be set aside ... unless the [amount of the award] shock[s] the judicial conscience and constitute[s] a denial of justice."  *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 165 (2d Cir.1998).

"The general grounds for a new trial are that (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive."  *EEOC v. United Health Programs of Am., Inc.*, No. 14-CV-3673 (KAM) (JO), 2020 WL 1083771, at *4 (E.D.N.Y. Mar. 6, 2020) (quoting *Lawson v. Cty. of Suffolk*, 920 F. Supp. 2d 332, 339 (E.D.N.Y. 2013)).

Critically, "[t]he Rule 59 standard is less stringent than the Rule 50 standard for judgment as a matter of law in two respects: '(1) a new trial under Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'"  *In re*

*Vivendi Universal, S.A. Sec. Litig.*, 765 F.Supp.2d 512, 574 (S.D.N.Y.2011) (quoting *Manley v. AmBase Corp.*, 337 F.3d 237, 244–45 (2d Cir.2003)).  "In weighing the evidence, however, the Court should not ordinarily ignore the jury's role in resolving factual disputes and assessing witness credibility." *Mugavero v. Arms Acres, Inc.*, 680 F.Supp.2d 544, 558–59 (S.D.N.Y.2010) (internal quotation omitted).

If the court finds that a verdict appears excessive and against the weight of the evidence, the trial judge has discretion to order a new trial without qualification or may condition a new trial "on the verdict winner's refusal to agree to a reduction (remittitur)." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998) (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)).  In other words, "[r]emittitur is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Stampf v. Long Island R. Co.*, 761 F.3d 192, 204 (2d Cir. 2014) (quoting *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir.1984)).

With this guidance, "[r]emittitur is appropriate in two situations: '(1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken, and (2) more generally, where the award is "intrinsically excessive" in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error.'" *Anderson Group, LLC v. City of Saratoga Springs*, 805 F.3d 34, 51 (2d Cir. 2015) (quoting *Kirsch*, 148 F.3d at 165) (identifying a specific error in that the "lost opportunity" category of damages was "impermissibly speculative" on the evidence).  "[A] district court should remit the jury's award only to the maximum amount that would be upheld by the district court as not excessive." *Earl v. Bouchard Transport Co.*, 917 F.2d 1320, 1330 (2d Cir. 1990).

Discussion

I.     *Prima Facie* Case

Defendant alleges that it is entitled to Judgment as a Matter of Law pursuant to

Rule 50(b), claiming that plaintiff failed to establish legally sufficient evidence at trial to support

the ADEA claim.  Dkt. 209 ("Def's Mem.") at 15.  Plaintiff counters that the evidence clearly

establishes a *prima facie* case.  "To establish a prima facie case of age discrimination under the

ADEA . . . a plaintiff must demonstrate the following: (1) [claimant] was within the protected

class; (2) [claimant] was qualified for the position; (3) [claimant] was subject to an adverse

employment action; and (4) the adverse action occurred under circumstances giving rise to an

inference of discrimination."  *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.,* 955 F.

Supp. 2d 118, 130–32 (E.D.N.Y. 2013) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d

Cir.2003)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.

2d 668 (1973).   Next, the burden shifts to the defendant after the plaintiff has established a

*prima facie* case to "articulate some legitimate, nondiscriminatory reason for the termination."

*Patterson v. Cnty. of Oneida,* 375 F.3d 206, 221 (2d Cir.2004) (internal quotations omitted).

"The nature of the burden that shifts to the defendant should be understood in light of the

plaintiff's ultimate and intermediate burdens.  The ultimate burden of persuading the trier of fact

that the defendant intentionally discriminated against the plaintiff remains at all times with the

plaintiff."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67

L. Ed. 2d 207 (1981).

More to the point, "although the burden that a plaintiff must meet at the prima facie stage

is minimal, the plaintiff must proffer at least competent evidence of circumstances that would be

sufficient to permit a rational finder of fact to infer a discriminatory motive."  *Claudio*, 955 F.

Supp. 2d at 130 (citing *Terry*, 336 F.3d at 141; *Cronin v. Aetna Life Ins.*, 46 F.3d 196, 204 (2d

Cir.1995)).  "To meet this burden, the plaintiff may rely on evidence presented to establish his

prima facie case as well as additional evidence.  Such additional evidence may include direct or

circumstantial evidence of discrimination."  *Id.* (citing *Desert Palace, Inc. v. Costa,* 539 U.S. 90,

99–101, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003).

However, the nominal requirements of the *McDonnell Douglas* framework "do not

necessarily support any inference of discrimination; and there are so many reasons why

employers give false reasons for an adverse employment action that evidence contradicting the

employer's given reason . . . does not necessarily give logical support to an inference of

discrimination."  *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).  Instead,

"the standard for determining whether the evidence was sufficient to sustain the submission of

plaintiff's case to the jury [is] simply whether on the basis of that evidence, a factfinder could

reasonably find the essential elements of a case of discrimination."  *Id.*  Finally, "pursuant to the

Supreme Court's decision in *Gross v. FBL Financial Services, Inc.,* a claimant bringing suit

under the ADEA must demonstrate that age was not just a motivating factor behind the adverse

action, but rather the 'but-for' cause of it."  *Claudio*, 955 F. Supp. 2d at 130 (citing *Gross v. FBL

Financial Services, Inc.*, 557 U.S. 167, 177–78, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)).

In the instant case, "it is apparent that [defendant] was not entitled to judgment as a

matter of law. [I]n addition to establishing a prima facie case of discrimination and creating a

jury issue as to the falsity of the employer's explanation, [EEOC] introduced additional evidence

that [defendant] was motivated by age-based animus and was principally responsible for

[claimants'] firing."  *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151, 120 S. Ct.

2097, 2110, 147 L. Ed. 2d 105 (2000).  Defendant's responding salvo that the jury's findings

"could only have been the result of sheer surmise and conjecture," Def's Mem. at 16, lands well wide of the mark.  At trial, plaintiff clearly proffered "competent evidence of circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Claudio*, 955 F. Supp. 2d 118 at 130.

First, EEOC offered evidence that AZ Metro took adverse employment actions against Roberts and Fernandez, who, as the two oldest employees in the Brooklyn and Queens sales department, were severed from their employment with AZ Metro on the same day.[2]  Defendant contended, in a contradictory narrative, that both Roberts and Fernandez willingly and coincidentally resigned on the same day.  Naturally, the two stories cannot both be accurate. Roberts and Fernandez both testified that they did not willingly resign on January 31, 2014. Tr. 248:23-25; 257:3-7; 414:12-16.  Roberts told the jury that he spoke with AZ Metro's Queens branch manager, Glenford Barsattee, on January 31, 2014, and rebuffed any suggestion that he wanted to quit his job at AZ Metro, as he wanted to work and needed money to pay medical bills.  He recalled that Barsatee simply told him that his employment would be terminated at the end of the day.  Later the same day, another supervisor, Pat Corso, told him that this was his last day at work.  Tr. 287:7-14; 258:16-17; 265:10-22; 258:16-17; 265:10-22.  Fernandez similarly testified that he spoke on the phone to Barsattee on January 31, 2014, and was told that AZ Metro wanted to "get rid" of him, a directive "from the top" of the company.  Tr. 414:17–416:24. Also admitted into evidence, over defendant's strenuous objections, were two lists of salespersons in the Brooklyn and Queens branches of AZ Metro and their ages.  One list shows

---

[2] EEOC and AZ Metro stipulated that claimants' last day of employment with defendant was January 31, 2014.  Trial Ex. P-78.  Age is not disputed by the parties, who stipulated that on January 31, 2014, the date of their discharge, Roberts was 66 years of age and Fernandez was 64 years of age.  *Id.*

Fernandez and Roberts would have been the two oldest salespeople in the Queens and Brooklyn branches.  Exhibit P-77.  The other shows how, after January 2014, many substantially younger salespeople were hired.  Exhibit P-32.  Other evidence includes the lack of fairly standard resignation forms signed by either Roberts or Fernandez on the day of their separation from the company.  Tr. 161:5–8.

Piercing through the verbal fog, it is clear that EEOC introduced sufficient evidence to allow the jury to find that defendant acted because of age and that age was not just a motivating factor behind the adverse action, but rather the 'but-for' cause of it."  *Gross*, 557 U.S. at 177–78.  Roberts testified as to the statements of multiple supervisory employees remarking on his age and a desire to "move the salesforce in a younger direction."  Dkt. 210 ("Pl's Opp'n") at 8; Tr. 257:8-11; 258:10–260:8; 261:1–11; 267:5–14.  Moreover, as plaintiff highlights, AZ Metro conceded during trial that "if [Roberts is] believed about that conversation, that people said he was fired because he was over a certain age, things like that, it's a question of fact."  *Id.;* Tr. 559:9-12.  Upon that showing, plaintiff surely established a *prima facie* case, which, cutting to the bottom line, means that defendant's Rule 50 motion fails.

## II.    Mitigation

Defendant has moved for judgment as a matter of law under Rule 50(b) with respect to whether claimants Fernandez and Roberts mitigated lost earnings following their termination, alternatively requesting a new trial or remittitur under Rule 59.[3]  Def's Mem., at 2, 10.  Plaintiff

---

[3] Billed as an alternate strategy, AZ Metro moves for an amended judgment under Rule 59(e).  However, "[i]t is not among the powers of the trial court, where the jury has awarded excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial."  *Crawford v. City of New London*, No. 11-CV-1371 (JBA), 2014 WL 3895909 at *1 (D. Conn. Aug. 8 2014) (quoting *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995)) (finding a motion to reconsider whether jury award was excessive should be construed as a

contends that Defendant's Rule 50(b) motion with respect to mitigation is "procedurally defaulted" for failure to raise the issue in a Rule 50(a) motion prior to the case's submission to the jury.  Pl's Opp'n at 40; *see also* Fed. R. Civ. P. 50(b); *Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005).[4]  Even if it was, plaintiff has moved to renew its own Rule 50(a) motion for judgment as a matter of law with respect to the identical issue, Dkt. 206 ("Pl's Mem.") at 21, which it submitted at the close of defendant's case at trial, Tr. 693-696.

Following appropriate consideration of the procedural sparring,[5] the Court makes the following findings of law relevant to mitigation.  "A plaintiff who has proven a discharge in violation of the ADEA is, as a general matter, entitled to back pay from the date of discharge until the date of judgment."  *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149 (2d Cir. 1998).  The purpose and measure of a back pay award is "complete[] redress [of] the economic injury the plaintiff has suffered as a result of discrimination."  *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 144–45 (2d Cir. 1993) (quoting *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir.1988)).  However, an employee forfeits the right to back pay if he or she fails to mitigate damages following termination.  *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 695–96 (2d Cir. 1998); *see also Ford Motor Co. v. EEOC*, 458 U.S. 219, 230-32, 102 S. Ct. 3057, 3065, 73 L. Ed. 2d

---

motion for remittitur).  Given this admonition of case law, the Court will consider only the issue of remittitur, which, if granted, would trigger EEOC's right to a new trial.

[4] At trial, defendant "move[d] to dismiss" the plaintiff's case, Tr. 556, which is properly interpreted as a motion for judgment as a matter of law in a jury trial, *Carroll v. Seaboard Air Line R. Co.*, 371 F.2d 903, 904 (4th Cir. 1967) (noting that motions to dismiss under rule 41(b) apply for non-jury trials, while a motion for directed verdict is proper for a jury trial).

[5] The Court declines the parties' invitation for a hike through the weeds.  Given AZ Metro's procedurally correct demand for remittitur, it does not matter whether it defaulted its Rule 50(b) motion on mitigation or whether EEOC's renewed motion for judgment on defendants' mitigation affirmative defense revived the argument.  The affirmative defense of mitigation is before the Court and it will be decided.

721 (1982) (discussing back pay and mitigation under Title VII).[6]

Applying these principles procedurally, "an employer seeking to avoid a lost wages award bears the burden of demonstrating that a plaintiff has failed to satisfy the duty to mitigate." *Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005) (quoting *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir.1997)). The employer carries the evidentiary burden to establish "(1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." *Id.* (quoting *Dailey*, 108 F.3d at 456). The employee's duty to mitigate is not onerous and does not require that they succeed. *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997). "The ultimate question 'is whether the plaintiff acted reasonably in attempting to gain other employment or in rejecting proffered employment.'" *Wills-Hingos v. Raymond Corp.*, 104 F. App'x 773, 775 (2d Cir. 2004) (quoting *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 695 (2d Cir.1998)). Whether the employee has exercised reasonable diligence in mitigating their loss is a question of fact for the jury. *Hawkins*, 163 F.3d at 695–96.

But, an employer "is released from the duty to establish the availability of comparable employment if it can prove that the employee made *no* reasonable efforts to seek such employment." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir.1998)) (emphasis added) ("[A]n employer should not be saddled by a requirement that it show other suitable employment in fact existed . . . when the employee . . . failed to pursue employment at all."). In line with this rule, "a discriminatee is not entitled to back pay to the extent that he fails to remain

---

[6] "In general, a plaintiff fails to mitigate adequately and therefore is entitled to neither backpay nor front pay 'to the extent he fails to remain in the labor market, fails to accept substantially similar employment, fails diligently to search for alternative work, or voluntarily quits alternative employment without good reason.'" *Reilly v. Cisneros*, 835 F. Supp. 96, 99 (W.D.N.Y. 1993), *aff'd*, 44 F.3d 140 (2d Cir. 1995) (citing *N.L.R.B. v. Madison Courier, Inc*., 472 F.2d 1307, 1317 (D.C.Cir.1972)).

in the labor market," cutting short a back pay award.  *See Kirsch*, 148 F.3d at 168 (quoting *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 174 n.3 (2d Cir.1965)) (holding that jury properly recognized point of retirement as back pay cutoff for ADEA plaintiff on his request for remittitur); *see also Hopkins v. New England Health Care Employees Welfare Fund*, 985 F. Supp. 2d 240, 262 (D. Conn. 2013*)*.

Under this rule, the burden remains on the employer to prove that the employee has made no effort to seek employment.  *See Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005) ("*Greenway* makes clear that the exception it creates is merely an alternate evidentiary route by which a defendant can prove that the plaintiff did not fulfill the duty to mitigate, not a burden-shifting device."); *see also Mastro Plastics*, 354 F.2d at 176–77.  While "the burden of going forward with *evidence of job availability* at the employer's plant should be placed on the employer," the Second Circuit has also noted that "the burden of going forward normally falls on the party having knowledge of the facts involved," *Mastro Plastics*, 354 F.2d at 176 (citing *United States v. New York, N.H. & H.R.R. Co.*, 355 U.S. 253, 256 n. 5, 78 S. Ct. 212, 214 n.5, 2 L. Ed. 2d 247 (1957)).  Further, "[s]ince one purpose of the back pay remedy is to compensate [complainants] only for actual losses, it is logically within the duty of the [plaintiff] to produce . . . the evidence most relevant to this question—testimony by the discriminatees." *Id.*

A.    *Mitigation by Fernandez*

Fernandez testified that he searched for work only in the six-month period following his termination before he "decided to fully retire" on August 1, 2014.  Tr. 425, 476–77.  Specifically, he acknowledged that any and all opportunities pursued as a part of his search—the more than one hundred orally claimed and the two-dozen written in his journal—were confined to that six-month period.  Tr. 444–45.  Hence, the testimony here is incontrovertible and unequivocal.

Awarding back pay for Fernandez beyond the point where he "fail[ed] to remain in the labor market" would contravene well-established law.  *See Kirsch*, 148 F.3d at 168.

As for whether Fernandez's efforts in the intervening six months between his termination and self-described retirement were sufficiently diligent, that is a determination that is ordinarily left to the jury.  Taking all inferences in the light most favorable to the non-movant, the jury's finding on this point does not strike the Court as the product of "sheer surmise and conjecture" as required by Rule 50, *Levitant*, 914 F. Supp. 2d at 295–96, nor does it shock the judicial conscience as per Rule 59, *Kirsch*, 148 F.3d at 165.

In any case, though, while the "determination of an award of damages lies within the province of the jury, [and so] a court's outright reduction of a jury's award without offering the plaintiff the option of a new trial on damages denies the plaintiff his constitutional right to a jury trial," *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 914 (2d Cir. 1997), the issue of mitigation is a clear point of law to be determined by the trial court.  Driven by these findings and conclusions, the Court recognizes and enforces a legal limitation to the jury's damages award, and the jury's back pay award for Fernandez is set aside as a matter of law under Rule 50, but only insofar as it awards back pay beyond August 1, 2014.  The award is thereby reduced to $22,084.32 in back pay.[7]

The computation, however, does not end there.  Given the jury's finding that AZ Metro's violation was willful, the award is doubled under ADEA's provision that such liquidated

---

[7] As plaintiff explains, the jury awarded Fernandez $250,288.96 by multiplying his last month's earnings at AZ metro ($3,680.72) by the number of months that had elapsed from his discharge to trial (68).  Pl's Opp'n at 53–54.  Since six months elapsed between Fernandez's firing on January 31, 2014, and his admitted retirement on August 1, 2014, and in keeping with the damage calculation quite appropriately used by the jury, the $22,084.32 back pay figure is the result of multiplying his last month's wage by six.

damages are available where there is a willful violation.  29 U.S.C. § 626(b); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S. Ct. 613, 624, 83 L. Ed. 2d 523 (1985); *McGinty v. State*, 193 F.3d 64, 71 (2d Cir. 1999).  Since AZ Metro has made no showing as to why the jury's finding of willfulness is unsupported, it will not be disturbed.  As a consequence, the total back pay award for Fernandez is doubled to $44,168.64.[8]

Under FED. R. CIV. P. 50(c)(1), the Court must also "conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed."  Because the Court can "identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken" given the reasoning above with respect to Fernandez's mitigation, remittitur is appropriate.  *See Anderson*, 805 F.3d at 51.  Accordingly, in the event the judgment as a matter of law with respect to Fernandez's mitigation is later vacated or reversed on appeal, defendant's motion for a new trial with respect to Fernandez's mitigation is granted, but conditioned on defendant's refusal to accept a remittitur of Fernandez's back pay in the amount of $22,084.32, meaning a remittitur of $228,204.64 from the $250,288.96 amount awarded by the jury.  Combined with liquidated damages, this would mean a total monetary award of $44,168.64 to Fernandez.

B.     *Mitigation by Roberts*

At trial, Roberts testified that following his termination he sought alternate employment

---

[8] EEOC has notified the Court of Fernandez's passing in April 2020. Dkt. 214.  As the EEOC correctly notes, Fernandez was not plaintiff in this case, therefore, there is no need to substitute a new party plaintiff under Fed. R. Civ. P. 25(a)(1) and the damages awarded survive his death. *See E.E.O.C. v. Timeless Investments, Inc.*, 734 F.Supp.2d 1035, 1057; *E.E.O.C. v. Mattress Firm, Inc.,* 2:13-CV-01745 (GMN) (VCF), 2016 WL 5417194 at *11 n.6 (D. Nev., Sept. 26, 2016).  The parties may petition the Court if further clarity regarding the language of the judgment is needed to effectuate the jury's award.

opportunities by visiting job fairs, sending out resumes weekly, applying to positions through various online job sites, and "talk[ing] to all [his] friends within the beverage business." Tr. 289. While these efforts tapered off after a year and a half due to obligations at home, they nonetheless continued, if reduced. Tr. 294-95. Thanks to these efforts, Roberts gained a few interviews and, later on, temporary employment as a result. Tr. 291-294. This testimony encompasses Roberts's efforts up to his June 10, 2016 deposition. The jury was entitled to credit this testimony and the Court does not consider its finding of mitigation up to June 10, 2016, to be against the weight of the evidence.

The parties debate, however, whether the absence of evidence of Robert's mitigation after the June 10, 2016 deposition should carry defendant's burden of establishing, as stated in *Greenway*, that Roberts made *no* efforts to mitigate after that time, which would cut off any right to back pay from that point onward. The pivot point in this analysis is plaintiff's failure to provide on-going discovery of Roberts's mitigation following his deposition. Not surprisingly, with this discovery blackout from plaintiff, no evidence regarding mitigation during this time period was offered at trial. Significantly, the record is clear that AZ Metro had called upon EEOC to make such discovery available. Defendant plainly requested on-going reporting of Roberts's mitigation efforts after his deposition, which, just as plainly, plaintiff failed to provide. Pre-Trial Tr. 38-59. Critically, there can be no dispute that where a defendant makes a reasonable request, *see* Fed. R. Civ. P. 34, within permissible limits, *see* Fed. R. Civ. P. 26(b)(1), a plaintiff is obliged to comply. Ignoring its own culpability, EEOC contends essentially that defendant is nonetheless required to have affirmatively elicited testimony at trial or otherwise demonstrated that Roberts made no efforts to mitigate. *See* Pl's Opp'n at 44. Defendant responds that such a construction would place it in an ambush, and reward EEOC for its failure

to comply with its basic discovery obligation to provide reasonable updates to its disclosures.[9]

And it would be an ambush indeed.  Short and simple, EEOC's failure to provide evidence of Roberts's claimed mitigation after June 10, 2016, is a self-inflicted wound that cannot be allowed to prejudice defendant.  Therefore, even though the burden of proof for the affirmative defense of failure to mitigate rests on a defendant, in the instant case it cannot serve to excuse plaintiff's egregious breach of its obligation to comply with a timely discovery request.  *See Mastro Plastics*, 354 F.2d at 176.  On this failure by EEOC, it is an appropriate to conclude at trial that defendant has satisfied its burden to show Roberts' failure to mitigate.

As a result, just like with the claim made by Fernandez, the jury's award of back pay contained a period of time during which Roberts failed to mitigate his damages.  Moreover, the cutoff for back pay is clear and the jury's verdict excessive insofar as it awards damages past that point.  *See United Health*, 2020 WL 1083771, at *4.  But, as with Fernandez, the grant of a new trial is conditioned on Roberts's refusal to accept a remittitur of the excess award.  Crediting the time found by the jury up to the cutoff date of June 10, 2016, Roberts is entitled to an award of $100,311.97 in back pay, meaning a remittitur of $107,392.81 from the $207,704.78 back pay amount awarded by the jury.[10]  As in the case of Fernandez's back pay award, the Court will not

---

[9] AZ Metro convincingly highlights the conundrum in its post-trial reply memorandum: "The fact that Plaintiff was precluded from offering any evidence that Roberts attempted to mitigate damages after June 10, 2016 does not mean that Defendant also had to affirmatively present evidence that Roberts failed to mitigate damages after this point in order to carry its burden of proof.  If that was the case, then Defendant would have to question Roberts about any job search efforts after June 10, 2016, and thereby open the door to an area the Court precluded Plaintiff from going, because Roberts is the only witness who could testify about his mitigation efforts." Dkt. 211 ("Def's Reply") at 15.  Put another way, AZ Metro would be punished for EEOC's breach of its discovery obligation.

[10] As explained by plaintiff, the jury arrived at Roberts's $207,704.78 back pay award by taking the average of his monthly income for 2013 ($3,520.42) and multiplying it by 59 months, the difference between the time elapsed from his discharge to trial (68 months) and the period he

disturb the jury's finding as to willfulness, and therefore, the total award for Roberts is $200,663.94, inclusive of liquidated damages.

III.    Front Pay or Reinstatement

No party disputes that it is within the power of a district court in an ADEA case, "to fashion remedies designed to ensure that victims of age discrimination are made whole[, and] that this language permits a district court, in appropriate circumstances, to award front pay to victims of age discrimination." *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir. 1984) (internal quotations and citations omitted). "A front pay award 'serves a necessary role in making victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment.'" *Padilla v. Metro-N. Commuter R.R.*, 92 F.3d 117, 125–26 (2d Cir. 1996) (quoting *Whittlesey*, 742 F.2d at 729). In *Padilla*, the Second Circuit also concluded that a front pay award through retirement age was not excessive when the record contained evidence that a plaintiff had "no reasonable prospect of obtaining comparable alternative employment". *Id.* at 121-22, 126; *accord Luca v. Cty. of Nassau*, 344 F. App'x 637, 641 (2d Cir. 2009). In "deciding whether an award of front pay is appropriate, a court should consider (1) whether reinstatement [is] either impossible or impracticable (2) whether the plaintiff has a reasonable prospect of obtaining comparable employment; and (3) whether the calculation of front pay would involve undue speculation." *Shannon v. Fireman's Fund Ins. Co.,* 136 F.Supp.2d 225, 233 (S.D.N.Y. 2001) (internal quotation marks and citations omitted); *accord Press v. Concord Mortg. Corp.*, No. 08-

---

worked for Grace Foods (9 months). Pl's Opp'n at 54. Since approximately 28.5 months elapsed between Roberts's firing on January 31, 2014, and his June 10, 2016 deposition, the Court multiplied his average monthly wage in 2013 by 28.5 in order to arrive at $100,331.97.

CV-09497 (KTD), 2010 WL 3199684, at *2 (S.D.N.Y. Aug. 11, 2010).

Although ADEA grants discretion to a district court "to order reinstatement, *see* 29 U.S.C. § 626(b), which can serve to reestablish the prior employment relationship . . . and at the same time assure the plaintiff of employment free of discrimination based on age, the court may find that relief inappropriate if the employer-employee relationship may have been irreparably damaged." *Kirsch*, 148 F.3d at 168–69.  Moreover, "when a plaintiff willfully leaves comparable employment due to a change in personal circumstances, front pay is not warranted." *Clark v. Gotham Lasik, PLLC*, No. 11-CV-01307 (LGS), 2013 WL 4437220, at *5 (S.D.N.Y. Aug. 20, 2013).  Moreover, "[n]either reinstatement nor front pay are appropriate . . . 'where the employment term would already have ended by the time of judgment.'" *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09-CV-5251 (JFB) (AKT), 2014 WL 1514235, at *3 (E.D.N.Y. Apr. 16, 2014) (quoting *Banks v. Travelers Companies*, 180 F.3d 358, 365 (2d Cir. 1999)); *see also Kirsch*, 148 F.3d at 169 ("[R]einstatement is a forward-looking remedy that should not be awarded where the plaintiff's eligibility for relief under the ADEA has terminated before judgment."); *Geller v. Markham*, 635 F.2d 1027, 1036 (2d Cir.1980).[11]

A.    *Roberts's Front Pay*

On behalf of Roberts, the EEOC seeks front pay as an alternative to reinstatement, arguing that even though Roberts is able to perform the duties of a swing salesperson, front pay is a more appropriate remedy in light of the protracted and contentious nature of this litigation. Pl's Mem. at 16.  Relying on Roberts's testimony that he planned to work until "about 75," plaintiff seeks front pay until February 2, 2022, when Roberts would turn 75.  *Id.* (citing Tr. 287-

---

[11] EEOC does not seek front pay or reinstatement on behalf of Fernandez, Dkt. 206-1 at 2, who made the decision to fully retire in August 2014.

88).  AZ Metro, perhaps surprisingly, while opposing prospective relief in its entirely, specifically opposes any award of front pay, asserting that, if *any* remedy is appropriate, reinstatement is the only suitable medicine.  Def's Opp'n at 3-7.

Even if Roberts's personal estimate of his employment plans were entitled to weight,[12] any such plans run afoul of AZ Metro's successful invocation of the affirmative defense of failure to mitigate, *see supra* at 32-37, with respect to the period of time following the conclusion of his deposition.  Plainly, "reinstatement is a forward-looking remedy that should not be awarded where the plaintiff's eligibility for relief under ADEA has terminated before judgment." *Kirsch*, 148 F.3d at 169.  The Court has already found above that Roberts ceased to mitigate long before the jury's verdict in 2019.  Relief beyond the verdict in such circumstances is improper.

Caselaw yields persuasive parallels.  In *Clark v. Gotham Lasik, PLLC*, the court found that a plaintiff was not entitled to front pay when she ceased to fulfill her obligation to mitigate. 2013 WL 4437220, at *5*; see also Mugavero v. Arms Acres, Inc.*, 680 F.Supp.2d 544, 578 (S.D.N.Y.2010) (holding that the plaintiff was not entitled to lost wages when she voluntarily left comparable employment for personal reasons, such as spending time with her sister); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998) (holding terminated employee who entered a training program rather than seeking comparable employment did "not fulfill his obligation to mitigate").  To award Roberts either front pay or reinstatement in the teeth of a finding that he did not mitigate his loss going forward from the time of his pretrial deposition would be to effectively compensate him for discrimination that did not occur.  Relief unhinged

---

[12] Courts have found that a plaintiff's estimate of his or her work plans, standing alone, can present an unduly speculative method of calculation that does not support front pay.  *See, e.g., DeMarco v. Ben Krupinski Gen. Contractor, Inc.*, No. 12-CV-0573 SJF ARL, 2014 WL 3531276, at *16 (E.D.N.Y. July 14, 2014); *Hine v. Mineta*, 238 F.Supp.2d 497, 502 (E.D.N.Y.2003); *Rivera v. Baccarat, Inc.*, 34 F.Supp.2d 870, 878 (S.D.N.Y. 1999).

from actual discrimination by the employer is not permitted under ADEA.  *See Claudio*, 2014 WL 1514235, at *3.  Plaintiff's motion for front pay is denied.

IV.     Trial Error

AZ Metro argues that the cumulative effect of errors made by the court, as well as the effect of each error independently, entitles it to a new trial.  Def's Mem. at 48.  Fundamental to an analysis of defendant's argument is the principle that an error, individually or cumulatively, must not be harmless to permit a new trial.  Rule 61 states that "[u]nless justice requires otherwise, no error in admitting or excluding evidence–or any other error by the court or a party– is ground for granting a new trial . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."  Fed R. Civ. P. 61. "Whether an evidentiary error implicates a substantial right depends on 'the likelihood that the error affected the outcome of the case.'"  *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 319 (2d Cir. 2004) (quoting *Malek v. Fed. Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993)).  Correspondingly, the movant must demonstrate that the factfinder's judgment was swayed in some material respect.  *Id.* (citing *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174 (2d Cir. 2000)).  A review of the errors it assigns shows that AZ Metro has failed to do so.

A.     *Roberts's Final Phone Conversation with Sales Manager*

Roberts testified as to a phone call he received on his last day of work from a sales manager, Glenford Barsattee.  Roberts told the jury that Barsattee "just told me that the decision was made, that the company is going in a different direction as per [a higher-up] sales manager, and I didn't fit into what he's [the higher-up manager] planning on doing because he wanted a younger sales force.  Also, he wanted to add females to the sales force."  Tr. 259:18-22.  Based

on his knowledge of his employer's organizational set up, Roberts said he believed the other

sales manager whom Barsattee referred to was Christopher Rochford.  Tr. 260.  Defendant

objected at trial and contends in its post-trial brief that this testimony is inadmissible double

hearsay.

The argument is without merit.  A statement offered against an opposing party and "made

by the party's agent or employee on a matter within the scope of that relationship and while it

existed" is not hearsay.  Fed R. Evid. 801(d)(2)(D); *see also Pappas v. Middle Earth Condo.

Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992) ("Liberal admissibility of this sort of proof is grounded

on certain premises.  One is that an employee is usually the person best informed about certain

acts committed in the course of his employment.").  "A sufficient foundation to support the

introduction of vicarious admissions . . . requires only that a party establish (1) the existence of

the agency relationship, (2) that the statement was made during the course of the relationship,

and (3) that it relates to a matter within the scope of the agency."  *Id.* at 537.  "[T]he declarant

need not be the 'final decisionmaker' on employment matters for his statement on those matters

to be deemed within the scope of his agency.  Rather, he need only be an advisor or other

significant participant in the decision-making process that is the subject matter of the statement."

*United States v. Rioux*, 97 F.3d 648, 661 (2d Cir. 1996); *see Walsh v. New York City Hous. Auth.*,

828 F.3d 70, 79 (2d Cir. 2016) (finding human resources representative "tasked with facilitating

the interview process" was acting within the scope of his agency when explaining to a candidate

the reason behind his interviewers' decision); *Allen v. City of New York*, 695 F. App'x 614, 615

(2d Cir. 2017).  "The statements of agents with supervisory power regarding 'the attitudes,

intentions or policies of . . . higher-ups' do concern matters within the agent's authority."  *Rioux*,

97 F.3d at 661 (citations omitted) (alterations in original).

21

The evidence at trial is compelling that, if Roberts's account of the phone conversation is to be credited, Barsatee's statements, including his restatement of what Rochford told Barsatee, falls squarely within the hearsay rule exception.   Barsatee was acting within his supervisory role as an agent of AZ Metro in terminating Roberts, the very act that brings the parties to court and one that falls cleanly within the scope of a manager's agency.[13]   Roberts is, of course, permitted to repeat for the jury the very explanation for his termination that he received from AZ Metro through Barsatee, as told to him by Rochford.  These statements were indisputably made within defendant's chain of command by individuals with authority to speak regarding such matters. Indeed, it was more than an explanation, it was an admission.  Still, AZ Metro was entitled to contest the veracity of Roberts's testimony, which it did vigorously.  The jury simply sided with Roberts.

B.    *Comparator Evidence*

AZ Metro centers its guns on the comparator evidence EEOC was permitted to offer at trial, which informed the jury of the names and ages of other members of defendant's salesforce working in the Brooklyn and Queens territory where the claimants worked at the time of their termination, contending that it was inadmissible because the evidence was irrelevant and highly prejudicial.  In brief, Arizona Metro simply reiterates the argument it made, and lost, *in limine* when the court ruled:

> Comparator Evidence: such evidence is admissible in appropriate form by either
> side.  The comparators must relate to those holding positions substantially similar

---

[13] To the extent the testimony could be characterized as "double" or "multiple" hearsay, Def's Mem. at 28; Def's Reply at 20, the foregoing analysis can simply be applied to each layer to find that they satisfy Fed. R. Evid. 801(d)(2)(D) because the statements occurred within AZ Metro's chain of authority.  *See AXA Equitable*, 2013 WL 1453267, at *7 n.3; *Walsh*, 828 F.3d at 79.

to those of the claimants at or around the time their employment with defendant ended.  Claimants, as the offers of proof establish, were swing shift route salesmen from the defendants Brooklyn warehouse operations.  Comparators will be limited to such route salespeople employed at that warehouse.  All others employed in Brooklyn who were not route salespeople, including but not limited to managers, clerical employees and warehousemen, do not qualify as comparators.  Prior to the time that any party offers comparator evidence, that party will submit a list of proposed comparators, on notice to their adversary, with a brief statement as to why the individual qualifies as a comparator.  The Court will then make a ruling specifically and in advance of the evidence being offered before the jury."

Dkt. 182.  Nothing has changed, including the ruling.

In support of its renewed argument, defendant cites to *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001), for the proposition that "an employee can never demonstrate disparate treatment when no one is hired to replace him because there is no point of comparison," Def's Mem., at 37, but on the very same the Second Circuit also wrote that "[i]n the run of the mill discrimination cases . . . a plaintiff can make a showing of disparate treatment simply by pointing to the adverse employment action and the many employees who suffered no such fate."  *Abdu-Brisson*, 239 F.3d at 467.  In fact, quite to the contrary of defendant's argument, *Abdu-Brisson* confirms that putative victims of employment discrimination may use data regarding employees who were adversely treated to support their claims.  Judged by this standard, the comparator evidence introduced by EEOC was clearly probative and not unduly prejudicial.  AZ Metro's objection as renewed has no merit.[14]

---

[14] Alternatively, defendant mischaracterizes the proffer of comparator evidence as an improper effort to provide "statistical analysis" akin to that which is typically proffered in a disparate impact case.  Pre-Trial Tr. 89; Def's Mem., at 36.  Clearly, that was not the basis for EEOC's proffer of comparator evidence.  The lists provide support for plaintiff to "point[] to the adverse

C.      *Authenticity of Phone Records*

Once again revisiting arguments that it made and lost *in limine*, AZ Metro argues that Roberts's and Fernandez's phone records, partially redacted by plaintiff for privacy reasons, were not properly authenticated and are inadmissible hearsay, and that the Court erred in ruling to the contrary.  Def's Mem. at 42-45.  Further, defendant claims the Court's failure to permit in camera review of those records entitles it to a new trial.[15]

The authenticity of the phone records and their redactions are covered by Judge Kuo's grant of EEOC's motion for a protective order.  *See* Dkt. 97; June 15, 2017 Minute Order.  The Court's position with respect to the authenticity of the records has not and does not now change from the Court's ruling *in limine*, Dkt. 176 at 14, at the pre-trial conference, Pre-Trial Tr. 110:18-111:16, or at trial, Tr. 25:12-26:12.  As stated in the *in limine* ruling, with no appeal taken from it, "[Judge Kuo's] ruling is the law of the case."  Dkt. 176 at 14.   AZ Metro's failure to object to Judge Kuo's determination regarding the authenticity of these records at the time of the ruling foreclosed any right it may have had to object to them after the close of discovery and on the eve of trial.

Insofar as defendant now seeks to broaden its objection to take exception with the

---

employment action" against Fernandez and Roberts "and the many employees who suffered no such fate."  *Abdu-Brisson*, 239 F.3d at 467.  The court does not characterize this as statistical analysis, and defendant's argument the evidence should not be received for that purpose when it was not, in fact, offered for that purpose is irrelevant.

[15] At the pre-trial conference, AZ Metro belatedly sought in camera of the unredacted phone records to make sure EEOC "didn't redact anything that was helpful" to AZ Metro.  Pre-Trial Tr. at 113:3.  The Court here reiterates its ruling at the pre-trial conference: not only did counsel for EEOC represent that the redactions were proper, but, more fundamentally, the time and place for such a request was before Judge Kuo, when entering the relevant protective order.  *Id.* at 113:19-23.

*substantive admissibility* of the phone records, that objection is not preserved.  Defendant acknowledges that that the phone records "could fall under the business record exception to the hearsay rule," but that "the proponent of the evidence must still prove" the elements of the exception.  Pl's Mem. at 43.  However, defendant made no hearsay objection to the records when they were discussed at sidebar, Tr. 25-26; 105-111, even though the Court explicitly held that the records would be considered admissible as business records under Fed. R. Evid. 803(6).  Tr. 106:12-15.  Defendant has failed to preserve this hearsay objection and cannot raise it now.  *See, e.g.*, *United States v. Coonan*, 938 F.2d 1553, 1565 (2d Cir. 1991); Fed. R. Evid. 103.

D.    *Claimants' Performance Write-Ups*

Defendant laments that claimants' performance "write-ups", that is, records of their job performance, were excluded from evidence.  To be sure, these records likely would have been highly probative if AZ Metro was contending that the claimants were fired for poor performance.  But, that was not its theory.  Rather, defendant argued that the claimants had tired of the "write-ups" and quit as a result.  From the perspective of that defense, the probative value of the content of the records was virtually nil, except to prejudice the claimants as poorly performing employees.  Further, in the context of the trial, the records were cumulative.  The claimants had conceded at trial that they received these write ups, and that they would testify to receiving them on the stand.  Simply put, this is merely another issue resolved adversely to defendant in the Court's pre-trial rulings as having "nothing to do with this trial."  Pre-Trial Tr. 16.  Nothing occurred unexpectedly at trial to disturb that ruling.  Consequently, defendant had no right to the inclusion of evidence that was cumulative, at best.  There was no error.

E.    *Plaintiff's Summation*

Defendant assigns error in the court's failure to submit, as it requested at trial, two

particular curative instructions to the jury at the close of EEOC's summation.  Tr. 769–770.  "A curative instruction is appropriate when during summation . . . counsel has made remarks that are not justified by the testimony."  *United States v. Perez-Valdera*, 111 F.3d 124 (2d Cir. 1997).  Even where such remarks have been made, however, a new trial is warranted only where "the challenged statements, viewed in the context of the [attorney's] summation as a whole, 'so infect[ed [the] trial with undue prejudice or passion as to require reversal.'" (alterations in original) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 119 (2d Cir. 2006)).  The challenged statements made by plaintiff's counsel were appropriate and did not warrant any additional instructions, let alone inflame the jury so as to warrant a new trial.

Defendant first takes issue with plaintiff counsel's statements in summation concerning AZ Metro's policies on notice of resignation.  Tr. 769.  Defendant sought a curative instruction on the ground that this was an incorrect characterization of the testimony.  *Id.*  However, as the court stated then and reiterates now, the debate over interpreting the handbook's implications for managers in this area is "essentially what the testimony was about" and is accordingly "in the ambit of fair comment."  Tr. 769.  There was no error in refusing to provide a curative instruction to disregard this proper advocacy from plaintiff's counsel.

Second, defendant sought a curative instruction after plaintiff's counsel relayed the instructions concerning the lists of employees and their ages that were generated for trial and introduced into evidence.  Tr. 747.  These statements simply explained that AZ Metro possessed the information contained in the lists, although the lists themselves were created for trial.  Indeed, the Court gave a clear instruction to the jury on the admission of each list into evidence that it was specially created for trial.  Tr. 138-39, 144.  The Court finds no error in declining to provide any additional instruction regarding the lists.

V.     Injunctive Relief

Injunctive relief is authorized by ADEA, 29 U.S.C. § 626(b), but its award is not

commanded in every instance that a violation of the law is established.  "Generally, 'an

injunction is a matter of equitable discretion; it does not follow from success on the merits as a

matter of course.'"  *Equal Employment Opportunity Comm'n v. United Health Programs of Am.,

Inc.*, 350 F. Supp. 3d 199, 211 (E.D.N.Y. 2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*,

555 U.S. 7, 32, 129 S. Ct. 365, 381, 172 L. Ed. 2d 249 (2008)); *see also E.E.O.C. v. Johnson &

Higgins, Inc.*, 91 F.3d 1529, 1542 (2d Cir. 1996) ("Under the ADEA, courts possess "broad

discretion ... in fashioning relief.") (internal quotation omitted).  As a guidepost, though, the

Second Circuit has "encouraged district judges . . . to fashion remedies designed to ensure that

victims of age discrimination are made whole."  *Whittlesey*, 742 F.2d at 727–28 (citing *Geller v.

Markham*, 635 F.2d 1027, 1036 (2d Cir. 1980)).   To the same end, the Supreme Court has held

that "the (district) court has not merely the power but the duty to render a decree which will so

far as possible eliminate the discriminatory effects of the past as well as bar like discrimination

in the future" when federal anti-discrimination laws are found to be violated.  *Albemarle Paper

Co. v. Moody*, 422 U.S. 405, 418, 95 S. Ct. 2362, 2372, 45 L. Ed. 2d 280 (1975) (quoting

*Louisiana v. United States*, 380 U.S. 145, 154, 85 S. Ct. 817, 822, 13 L. Ed. 2d 709 (1965)).

In determining whether to award an injunction, a district court must evaluate "the balance

of equities and consideration of the public interest."  *Winter*, 555 U.S. at 32.  In order to merit

injunctive relief, the moving party has the burden to show that "there exists some cognizable

danger of recurrent violation."  *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct.

894, 97 L. Ed. 1303 (1953).  "Courts will grant injunctive relief against an employer when there

is evidence of widespread and continuous retaliation or harassment that indicates that the threat

of future bad acts is high." *Lewis v. Am. Sugar Refining, Inc.*, No. 14-CV-2302 (CRK), 2018 WL 4179053, at *3 (S.D.N.Y. Aug. 15, 2018) (citing *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1215 (2d Cir. 1993) & *EEOC v. KarenKim, Inc.,* 698 F.3d 92, 100–02 (2d Cir. 2012)).  In keeping with the broad nature of the district court's equitable discretion, the offending conduct need not be continuous to warrant injunctive relief.  A court may find injunctive relief merited even if a defendant appears to have ceased the offending conduct upon consideration of "the bona fides of the [defendant's] expressed intent to comply" with the law, "the effectiveness of the discontinuance," and "the character of the past violations." *W.T. Grant*, 345 U.S. at 633.  At the same time, there must be "something more than the mere possibility [of recurrent violations] which serves to keep the case alive." *Id.*; *see also Equal Employment Opportunity Comm'n*, 350 F. Supp. 3d at 211.

Given the contentious nature of this litigation from its inception, it is hardly surprising that the parties remain deeply divided as to the appropriateness of any injunction.  Yet, the jury found that defendant willfully discriminated against the two oldest members of the swing sales force on the basis of age.[16]  Accordingly, the Court concludes that EEOC has demonstrated that without injunctive relief, there is a risk of recurrence.  *KarenKim,* 698 F.3d at 100–02.  Presently, however, there has been some movement by AZ Metro as to the nature of the injunction should

---

[16] EEOC argues, "once a violation of a federal anti-discrimination law has been proven, injunctive relief is presumptively appropriate and it is the defendant's burden to show that such relief is not appropriate," Dkt. 206-1 at 6–7, and offers a list of out-of-circuit citations.  *See EEOC v. Service Temps, Inc.*, 679 F.3d 323, 338 (5th Cir. 2012); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1253–54 (11th Cir. 1997); *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1292 (7th Cir. 1993); *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544-45 (9th Cir. 1987); *EEOC v. Rogers Bros., Inc.*, 470 F.2d 965, 966-67 (5th Cir. 1972) (per curiam).  Nonetheless, in the end, EEOC acknowledges, as it must, that the question remains open in the circuit. *See EEOC v. KarenKim, Inc.*, 698 F.3d 92, 99 n.2 (2d Cir. 2012) (reserving the question).  The Court declines to adopt EEOC's suggested burden shifting framework.

the Court determine, as it has, that one should be entered.  As a result, in accordance with the

EEOC's requests and AZ Metro's indication that, if the Court should find injunctive relief is

warranted, it would be amenable in good faith to measures designed to eliminate future age

discrimination in accordance with the ADEA, the Court orders the following:

1. Defendant is enjoined from terminating employees because of their age for five
   years.

2. Defendant is ordered to revise the AZ Metro employee handbook section entitled
   "Prohibition Against Harassment and Discrimination" in accordance with the
   EEOC's suggested revisions and conformities within thirty days of entry of
   judgment.  *See* Pl's Mem. at 10–11.

3. Defendant is ordered to provide a copy of the revised employee handbook section
   to the EEOC within thirty days of entry of judgment.

4. Defendant is ordered to provide a copy of the revised employee handbook section
   to every new employee within seven days of his or her hire date, for a period of
   five years within thirty days of entry of judgment.

5. Defendant is ordered to distribute a paper copy of a revised employee handbook
   section entitled "Prohibition Against Harassment and Discrimination" to every
   AZ Metro employee within the Brooklyn/Queens branch within thirty days of
   entry of judgment.

6. Within sixty days of entry of judgment and annually thereafter for a period of two
   years, defendant is ordered to provide all supervisory, management, and human
   resources personnel within the Brooklyn/Queens branch two hours of live training

on the rights and responsibilities of employees and employers under the Age
Discrimination in Employment Act, including a detailed description of age
discrimination; the contents of Defendant's anti-discrimination policy, as revised;
the procedure for investigating and responding to employee complaints; and, the
right of employees to engage in protected activity free of retaliation.

7. Within sixty days of entry of judgment and annually thereafter for a period of two
years, defendant is ordered to will provide all non-management and non-
supervisory employees within the Brooklyn/Queens branch one hour of live
training on the rights and responsibilities of employees and employers under the
Age Discrimination in Employment Act, including a detailed description of age
discrimination; the contents of Defendant's Prohibition Against Harassment and
Discrimination policy, as revised; the procedure for investigating and responding
to employee complaints; and the right of employees to engage in protected
activity free of retaliation.

8. Within sixty days of entry of judgment and annually thereafter for a period of two
years, defendant is ordered to post a notice describing what age discrimination is,
the principle ADEA laws governing age discrimination in the workplace, the
internal complaint procedure to follow if an employee believes they have been
subjected to age discrimination, and EEOC contact information for use by
employees to report age discrimination. This notice is to be displayed in every
break room and on every bulletin board at AZ Metro's Brooklyn/Queens branch.
If there is no break room or bulletin board, Defendant must post the notice in a
common area where all employees have the opportunity to view it.

9.  Within ninety days of entry of judgment and annually thereafter for a period of two years, defendant is ordered to report to EEOC in writing any and all complaints of age discrimination or retaliation at AZ Metro's Brooklyn/Queens branch that it has received during that year.  Each report will include the names of and contact information of the individuals who made each complaint, describe the nature of each complaint and explain how each complaint was resolved.

<u>Conclusion</u>

For the reasons set forth above, plaintiff's motion and defendant's motion are granted in part and denied in part:

Defendant's motion for judgement as a matter of law regarding plaintiff's *prima facie* case of harassment is denied.  Defendant's motion for judgment as a matter of law is granted with respect to mitigation, and defendant is entitled to a new trial on the issue of damages, provided that plaintiff declines remittitur of $228,204.64 from the $250,288.96 amount awarded by the jury to Fernandez (for an award of $22,084.32 in back pay, doubled to $44,168.64 with liquidated damages) and a remittitur of $107,392.81 from the $207,704.78 amount awarded by the jury to Roberts (for an award of $100,331.97 in back pay, doubled to $200,663.94 with liquidated damages).  Defendant's motion for a new trial due to trial error is denied.

Plaintiff's motion for judgment as a matter of law on the issues of front pay and reinstatement is denied.  Plaintiff's motion for injunctive relief is granted in part, as specified in this order.

A new trial will be ordered unless plaintiff agrees to accept remittitur no later than 30 days from the docket entry of this Order, in writing, filed electronically with the Court and served on defendants.

So Ordered.
Dated:   Brooklyn, New York
             December 16, 2020

*/s/ Eric N. Vitaliano*
ERIC N. VITALIANO
United States District Judge